FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

20 MAR 19 PM 1: 08

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

DANA D. BRYNGELSON and DAVID    *
BRYNGELSON, Her Husband,    *
     *
     Plaintiffs,    *
     *
     v.    *      CV 118-216
     *
BIOMET, INC.; BIOMET    *
ORTHOPEDICS, LLC; and BIOMET    *
U.S. RECONSTRUCTION, LLC,    *
     *
     Defendants.    *

## O R D E R

Defendants move to strike Dr. Terry Arrington's expert testimony because his expert report satisfies the summary disclosure requirements of Fed. R. Civ. Pro. 26(a)(2)(C) rather than the more stringent requirements of Rule 26(a)(2)(B). The Court **DENIES** the motion (doc. no. 120) because Dr. Arrington is a treating physician whose opinions fall within the scope of his diagnosis and treatment.

## I. FACTS

Plaintiffs allege Defendants' M2a Magnum Hip System, which utilizes a metal femoral head and metal acetabular cup, is defective because metal-on-metal articulation leads to metal corrosion inside the hip joint. (Compl., doc. no. 1, ¶ 22.) The

corrosion, in the form of metal oxides and hydroxides, purportedly causes fluid accumulation and damage to soft tissue and bone. (Id.) Plaintiffs claim this hip system, implanted into Mrs. Bryngelson, "failed, in part due to metallosis, causing her to sustain severe and permanent injury which required an additional hip replacement surgeries [sic] . . . ." (Id. ¶ 52.)

Dr. Terry Arrington's expert report (doc. no. 120-2) states in full as follows:

> Ms. Dana Bryngelson has been a patient since March 19, 2015 when she presented with bilateral total hip pain. She had the right total hip done in 2011 and the left one done in 2012. She had metal on metal Biomet total hip arthroplasties placed at that time. When she presented to see me, she was having pain in both hips with systemic symptoms of not feeling well. In addition, she had elevated serum metal ion levels above the threshold of normal. Her MRI findings did not reveal any osteolysis or pseudotumor formation but in the face of her metal on metal bearings combined with pain and elevated metal ions we decided to pursue hip revision surgery starting with the right hip. Both hips were subsequently revised to the Biomet active articulation polyethylene heads to mate with the existing metal acetabular shells. There were no complications and she progressed well with healing of both hips and no subsequent pain as far as our last evaluation. Her serum metal ions also normalized which were positive and anticipated.

> It is my professional opinion that she had an adverse reaction to metal debris (ARMD). This was manifested as having pain with the associated metal on metal bearings along with elevated serum metal ions that were indicative of her underlying hip bearings. It is my opinion that in order to eradicate her pain,

2

normalize her serum metal ion levels to acceptable range, and prevent any potential future problems such as tissue damage that revision surgery was warranted.

## II. DISCUSSSION

Rule 26(a)(2)(B) requires detailed disclosures by any witness "retained or specially employed to provide expert testimony . . . ." All other expert witnesses must only, pursuant to Rule 26(a)(2)(C), provide summary disclosures identifying the subject matter of the testimony and summarizing all facts and opinions. Defendants allege Dr. Arrington must satisfy the detailed disclosure requirements of subsection (B) because Plaintiffs retained him to provide testimony beyond the scope of treatment and diagnosis. (Defs.' Br., doc. no. 120-1, p. 4.)

Plaintiffs, in return, explain they identified Dr. Arrington as both a retained expert and non-retained treating physician "out of an abundance of caution because Plaintiffs' counsel paid him $1,000 to prepare a report that summarized the opinions given in his medical records and operative report." (Pls.' Resp. Br., doc. no. 121, p. 2.) They further explain Dr. Arrington "was not provided with any additional materials or studies to review and did not render any opinions beyond those already contained in his medical records." (Id.)

3

The mere fact Plaintiffs paid Dr. Arrington for his time to prepare the summary disclosures is not dispositive of whether he is a retained or specially employed expert. Kondragunta v. Ace Doran Hauling & Rigging Co., No. 1:11-cv-01094-JEC, 2013 WL 1189493, at *10 (N.D. Ga. Mar. 21, 2013); see also Brown v. Best Foods, A Div. of CPC Int'l, Inc., 169 F.R.D. 385, 388 (N.D. Ala. 1996) ("The court is not inclined to rule that payment to a treating physician of a reasonable fee for the time he or she spends testifying would automatically result in 'retaining' or 'specially employing' the physician."); Thompson v. Wal-Mart Stores, Inc., No. CIV 98-1034 JC/KBM (ACE), 1999 WL 35808936, at *3 (D.N.M. Sept. 13, 1999) (same). Instead, one must look to the substance of his testimony. The summary disclosure requirements apply when a treating physician's opinions fall within the scope of diagnosis and treatment, and the detailed disclosure requirements apply when the opinions fall outside that scope. Rangel v. Anderson, 202 F.Supp.3d 1361, 1365 (S.D. Ga. 2016); Kondragunta, 2013 WL 1189493, at *10.

Here, all of Dr. Arrington's opinions fall comfortably within the scope of his diagnosis and treatment of Mrs. Bryngelson. Defendants point to Dr. Arrington's opinion concerning specific causation, presumably in reference to his findings (1) Mrs. Bryngelson had an adverse reaction to metal

4

debris (ARMD) caused by metal-to-metal articulation of Defendants' hip system; and (2) revision surgery was necessary to modify the hip system and stop her pain, normalize her serum metal ion levels, and prevent future problems such as tissue damage. These findings, however, lie at the very core of diagnosis and treatment. Dr. Arrington had to determine whether the hip system was the source of the problem before deciding the appropriate remedial action was revision surgery to modify the metal-to-metal configuration.

There is no special blanket rule declaring all causation opinions subject to the more stringent disclosure requirements of subsection (B). Instead, courts "have routinely held that because a treating physician considers not just the plaintiff's diagnosis and prognosis, but also the cause of the plaintiff's injuries, opinions as to the cause of injuries do not require a written report if based on their examination or treatment of the patient." Brown, 169 F.R.D. at 388-89 (N.D. Ala. 1996) (internal quotations marks and citations omitted); see also Kondragunta, 2013 WL 1189493, at *12 ("Accordingly, if a physician's opinion regarding causation . . . was formed and based on observations made during the course of treatment, then no Subsection B report is required.")

For all of these reasons, Dr. Arrington's summary expert report is sufficient.

Defendants' initial brief also sought exclusion of testimony from treating physicians Drs. Jewel Duncan and Joseph Hooper because of Plaintiffs' alleged failure to submit summary disclosures. The issue appears moot because Plaintiffs reported a production of these disclosures in their response brief, and Defendants do not mention these physicians in their reply brief. If the Court has misinterpreted the briefs, Defendants may re-urge this aspect of their motion on or before April 1, 2020. Any such filing should include a discussion, pursuant to Fed. R. Civ. P. 37, concerning whether any failure was substantially justified or harmless.

**ORDER ENTERED** at Augusta, Georgia, this ___19ᵗʰ___ day of March, 2020.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA